Snoddy v. Leavitt.

Filed Feb. 13, 1886.

———————◆———————

No. 12,305.

SNODDY v. LEAVITT.

ESTOPPEL.—*Married Woman.*—*Joining in Deed to Husband's Land.*—*Assertion by Her of After-Acquired Title.*—*Warranty.*—A wife, who joined her husband in the execution of a warranty deed conveying his land, at a time when she was not liable upon covenants of warranty, is not estopped from asserting a title to such land which she subsequently acquires in her own right.

TAXES.—*Payment by One in Possession Under Legal Title.*—*Lien.*—*Mortgage.*—For taxes paid by him while in possession under the legal title a person can not enforce a lien upon the real estate as against one who obtains title thereto through the foreclosure of a mortgage already existing thereon.

From the Clay Circuit Court.

*G. A. Knight* and *C. H. Knight*, for appellant.
*E. S. Holliday* and *G. A. Byrd*, for appellee.

ZOLLARS, J.—Appellee brought this action to have the title to certain lots described in her complaint quieted in her.

The following is a fair summary of the facts as established by the evidence: In 1873 William Leavitt, appellee's husband, purchased and received a warranty deed for a tract of land adjoining the city of Brazil, and, appellee joining, executed a mortgage to his grantor to secure about $5,000 of the unpaid purchase-money. Subsequent to this, Leavitt platted and laid off the lots as an addition to the city of Brazil. On the 1st day of June, 1874, William Leavitt and appellee, as his wife, joining, conveyed the lots in dispute by a warranty deed to one McClelland. In November, 1874, the notes secured by the mortgage not having been paid, an action was commenced to foreclose the purchase-money mortgage, to which action McClelland was one of the parties defendants. In June, 1875, the mortgage was foreclosed, and all the property covered by it was ordered sold to make the amount of two of the notes described in the mortgage. In December, 1875, the other note secured by the mortgage was assigned to John Leavitt, a brother-in-law of appellee. In May, 1876, McClelland, his wife joining, by a warranty deed, conveyed the lots in dispute to appellant. In February, 1877, appellant purchased the same lots at a tax sale for the amount of the taxes assessed for the year 1875 and former years, and returned as delinquent in the name of McClelland. Subsequently he paid the taxes for the years 1877, 1878 and 1879. On the 3d day of December, 1878, John Leavitt commenced an action to foreclose the purchase-money mortgage for the amount of the note which he owned by assignment from the mortgagee, as aforesaid. To this action appellant and his wife, with others, were parties defendants, and made default. On the 13th day of October, 1879, a decree was rendered foreclosing the mortgage, and ordering a sale of all the land covered by it, including the lots in dispute. No sale was ever made upon this decree. During the pendency of this action, viz., on the 21st day of December, 1878, the sheriff sold all

of the land and lots under the first decree, and said John Leavitt became the purchaser, and received a sheriff's deed therefor on the 29th day of December, 1879. In November, 1881, John Leavitt, by warranty deed, conveyed to appellee all of the land and lots covered by the purchase-money mortgage, and which he had purchased at the sheriff's sale, with the exception of certain named lots. The deed covered the lots in dispute. In February, 1882, appellant received from the county auditor a tax deed for the lots in dispute, and purchased by him at tax sale as above stated.

Upon these facts the court below rendered a decree quieting the title to the lots in dispute in appellee as against any claim of title by appellant through the conveyances to him, and as against any claim of a lien for the amount of taxes paid by him.

To reverse this judgment appellant prosecutes this appeal. One of his contentions is, that, appellee having joined with her husband in a warranty deed conveying the lots to McClelland, she is estopped from asserting an after-acquired title as against the grantees, and that the title she acquired by her deed from John Leavitt inures to the benefit of her grantee, McClelland, and through him to the benefit of appellant. This contention is based upon the cases of *King* v. *Rea*, 56 Ind. 1, and *Beal* v. *Beal*, 79 Ind. 280, and the reasoning upon which those cases are made to rest. The case of *King* v. *Rea*, *supra*, which was followed in *Beal* v. *Beal*, *supra*, rests upon the doctrine of equitable estoppel.

The key to the case is given in the following extract from the opinion: " The statute which enables her thus to convey, during coverture, the lands held in her own right, imposes upon her, as a corollary, all the obligations of the conveyance, save those which the statute itself excepts—for it would be an absurdity to say that she had passed her lands if she could take them back again; and the estoppel does not depend upon the obligation of the covenant of warranty, although the books sometimes loosely say so; it depends on good faith,

right conscience, fair dealing and sound justice. When a person, competent to act, has solemnly made a deed, he shall not be allowed to gainsay it to the injury of those whom he has misled thereby." Again: "And we think it may be held, as settled law in this State, that a married woman may be estopped by matter *in pais* from setting up title to lands.. *Scranton* v. *Stewart*, 52 Ind. 68, and authorities there cited. If so, we do not clearly perceive why she should not be estopped by her deed." It was accordingly held that when a married woman joins with her husband in a conveyance of lands held in her own right, which purports to convey the entire estate therein, she is estopped from afterwards setting up any title to the lands so conveyed, whether it existed at the time of making the conveyance or was subsequently acquired.

It may well be said that some of the reasoning upon which the case rests, has been shaken and overthrown by the subsequent cases, holding that prior to the statute of 1881, R. S. 1881, section 5117, a married woman was not bound by an estoppel *in pais*, especially when such an estoppel was invoked to affect her right or title to real estate. See *Levering* v. *Shockey*, 100 Ind. 558; *Wilhite* v. *Hamrick*, 92 Ind. 594; *Buchanan* v. *Hubbard*, 96 Ind. 1; *Applegate* v. *Conner*, 93 Ind. 185; *Parks* v. *Barrowman*, 83 Ind. 561; *Brandenburg* v. *Seigfried*, 75 Ind. 568; *Suman* v. *Springate*, 67 Ind. 115; *Unfried* v. *Heberer*, 63 Ind. 67; *Behler* v. *Weyburn*, 59 Ind. 143; *Miller* v. *Albertson*, 73 Ind. 343. However this may be, upon the main question decided, the case has been cited and followed, and has become the settled law of the State. *Beal* v. *Beal*, *supra*; *Youst* v. *Hayes*, 90 Ind. 413.

We think it very clear, however, that neither the doctrine of the case and those following it, nor the reasoning upon which it rests, is applicable and controlling here. The real estate, in the conveyance of which appellee joined, was not her separate property; hence she was not the real vendor, and did not receive the consideration therefor. Indeed, she

was not a vendor at all in any full legal sense. The land belonged to the husband. She had no present title to any portion of it. Her right was an inchoate right simply. When, by the death of the husband or the sale of the land at judicial sale, her inchoate right might ripen into a present right, it would, under our statute, be greater than a dower right, yet, until the happening of one of these events, her right was no more a present right than in case of a right of dower. She had nothing that she could convey separate and apart from the right and title of the husband. She could join with him in a conveyance, but her deed really conveyed nothing in the way of title, because she had no present interest to pass by deed. Her joinder in the deed operated, not as a conveyance, but as a release of her inchoate right. The whole title was in the husband. His deed, without the wife joining therein, would have carried the whole and the perfect legal title. If the husband make a deed of his lands, that deed carries the perfect legal title, and hence the joinder of the wife therein is of no consequence at all, unless she survives the husband. Her joinder in the deed is a release of her right to claim one-third of the land in case she survives the husband, and nothing more. So our cases hold, and so the authorities are elsewhere.

With the death of the husband, the wife's inchoate right becomes a present right, and hence she may convey it, and so, if the husband's real estate be sold at judicial sale, under the act of 1875, the wife's inchoate right becomes a present right, and she may sell or mortgage it, her husband joining in the deed or mortgage. *Hudson* v. *Evans*, 81 Ind. 596; *Mc-Cormick* v. *Hunter*, 50 Ind. 186; *Hancock* v. *Fleming*, 85 Ind. 571 (576); *Dunn* v. *Tousey*, 80 Ind. 288; *Youst* v. *Hayes*, *supra*.

By joining in the husband's deed of his real estate, and thus releasing her inchoate right simply, it can not be said that the wife put herself in a position where the reasoning in the case of *King* v. *Rea*, *supra*, should be applied to her. She

conveyed nothing, received nothing, and did nothing which should estop her from asserting an after-acquired title in her own name, and acquired by her own means, she at that time not being liable upon a covenant of warranty.

In the case of *Gonzales* v. *Hukil*, 49 Ala. 260, it was held that the joint conveyance of land by the husband and wife, as his property, does not estop the wife from setting up a title subsequently acquired; that she is not *sui juris*, except to relinquish her dower.

In *Blain* v. *Harrison*, 11 Ill. 384, it was held, as stated in the syllabus, that a wife who joins her husband in a deed is not a party to the deed except for the purpose of releasing her dower in the estate conveyed, and is not thereby estopped from setting up a subsequent title.

If the rule contended for by appellant should be applied to appellee, surely she ought not to be estopped, except as to the interest she had in the land conveyed. It would be inequitable to impose upon her an estoppel that would prevent her from acquiring and asserting an interest in the lands which she had not conveyed, nor attempted to convey. That would be to make the wrongs of the husband work as an estoppel against the wife. He sold the land and received the pay for it, and hence it is easy to see why he should be estopped from asserting against his grantee an after-acquired title; but, clearly, the estoppel ought not to be broader than the grant. As we have seen, a married woman was not liable upon covenants of warranty at the time the deed by appellee's husband and herself was executed to McClelland.

A husband is liable upon the covenant of warranty, where he joins the wife in a deed of her real estate, and he is thus liable as upon a contract that he is competent to make. If in such a case his liability were to be measured by the doctrine of estoppel alone, we know of no reason why his liability should extend beyond the interest he had in the land conveyed.

Appellee was not liable upon the covenant of warranty,

nor was she estopped from acquiring and asserting title to the land under the facts of this case. The court below in so holding held correctly.

But one question remains. Appellant does not claim that he acquired any title through the tax sale and tax deed, but his contention is that he should have a lien upon the real estate for the amount of the taxes by him paid. We think otherwise. As between appellee and himself, he was simply paying his own taxes. The legal title was in him, and he was in possession of the real estate. See, as somewhat analogous, the case of *Cooper* v. *Jackson*, 99 Ind. 566.

Judgment affirmed, with costs.

